IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKIE A. BIDDLE,<br><br>                    Petitioner,<br><br>       v.<br><br>P.D. BRAZELTON,[1] Warden, Pleasant Valley State Prison,<br><br>                    Respondent. | No. 2:12-cv-01119-JKS<br><br>MEMORANDUM DECISION |

Rickie A. Biddle, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Biddle is currently in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at Pleasant Valley State Prison in Coalinga, California.  Respondent has answered, and Biddle has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

The California Court of Appeal recounted the factual background as follows:

On the evening of October 1, 2007, defendant and several cohorts invaded a home to rob the occupants.  Defendant wielded a semiautomatic pistol, and pistol-whipped or kicked some victims, and made threats.  The perpetrators were soon captured, in possession of property taken from the home.  It appears the home was targeted because its occupants were marijuana growers.  Video taken by a surveillance camera at the home that night shows codefendant Jack Baldwin cutting down "fully bushed" marijuana plants on the property.
       Trial for defendant and codefendant Jack Baldwin—not a party to this appeal—was scheduled to begin on March 10, 2009.  Two other cohorts, Daniel Jones and Christopher Levan, had admitted charges arising out of this incident and were already sentenced to state prison.  Both were listed by defense counsel on her "potential" witness list, but she obtained a transportation order only for Levan.

---

       [1]       P.D. Brazelton, Warden, Pleasant Valley State Prison, is substituted for William Knipp, former Warden, Mule Creek State Prison.  FED. R. CIV. P. 25(c).

-1-

The record contains a settlement conference minute order signed by Judge Wilson Curle, dated January 12, 2009, stating defendant rejected an 18-year offer.

A minute order dated February 27, 2009, shows that Judge James Ruggiero presided over the trial readiness conference, and trial was set for March 5, 2009. However, on March 2, 2009, Judge William Gallagher vacated that trial date and reset trial for March 10, 2009.

On the day of trial, March 10, 2009, Judge Gallagher held an in camera *Marsden* hearing[2] at defendant's request.  Defendant described his interactions with his prior attorney, David Wilson, and his current attorney, Cindy Campbell, and claimed he had never been allowed to accept an earlier plea bargain offer for eight years in prison, and when that offer was raised to 15 years, he fled because he was scared.  He told Attorney Campbell he did not want to go to trial.  He told her to take whatever offer was on the table, which was then 18 years, but he claimed Campbell told him she was no longer on good terms with the prosecutor and therefore she could not get a good deal for him.  The night before the *Marsden* hearing, she told him a witness had changed stories, and later she sent him word that the offer was for 21 years.  Defendant argued he had been deprived of his chance to settle the case earlier, on better terms.  The trial court asked defendant if there was anything else he wanted to add, and defendant said "No. That's it, Your Honor."

The court then invited Attorney Campbell to respond.  She testified defendant had *rejected* the 18-year offer, though he had also told her did not want to take the case to trial.  Earlier, other codefendants had said defendant did not have a weapon, but within the "last couple of days" their stories changed.  The prosecutor then told Campbell he would want "anything over 20" years.  The parties finally agreed on 20 years, which the trial court had already rejected.

The trial court explained its ruling, including its evaluation of the case and Attorney Campbell's actions.  Defendant repeatedly interrupted.  Although the court engaged in some dialogue with defendant, eventually the court cut him off, stating, "Hang on, Mr. Biddle.  [¶] DEFENDANT BIDDLE: I'm sorry.  I'm sorry.  [¶]  THE COURT: This is my turn to explain to you.  [¶]  DEFENDANT BIDDLE: Okay.  Great.  Sorry."  The court then completed its thoughts.  The court explained that defendant had rejected the 18–year offer, and his decision to become a fugitive had "heavily compromised" settlement prospects, "especially when the proof is evident [and] the facts are strong," and that these circumstances were not due to any failings by Campbell, so the motion was denied.

After codefendant Baldwin's *Marsden* motion was heard and denied, the trial court placed on the record matters that had occurred earlier that morning.  The court stated, without objection by counsel: "This morning counsel wanted to meet with me in chambers to discuss a possible trial-day settlement of the case, and all of us were well

---

[2]     *People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a hearing to allow the defendant to explain its grounds).

-2-

aware of the court's policy that does not allow trial-day settlements of the case unless there has been a change of circumstances. And generally stated a change of circumstances means something that was either unknown or unknowable to counsel prior to the trial date. It has to be both unknown and unknowable to counsel prior to the trial date."

The court explained why neither of the attorneys presented any such change of circumstances. Specifically as it related to defendant, one or "perhaps both" of the other coparticipants—meaning other than codefendant Baldwin and defendant—had previously told counsel that defendant did not wield a gun, but then changed that story, and was either unwilling to say defendant did not have a gun or was prepared to *confirm* the prosecution's evidence that defendant did have a gun, and this change of story had occurred over the prior weekend. However, because a surveillance tape appeared to show defendant had a gun in his hand, and two "or more" of the victims identified defendant as being armed, this change of story did not reflect information that was unknown or unknowable by counsel within the meaning of the court rule. Accordingly, defendant would have to plead "to the sheet" and admit all charges "with no guarantees as to sentence." The court had called Judge Ruggiero, "the home court judge" in this case, and Judge Ruggiero concurred that no sufficient change of circumstance was present in this case, "No way, no how."

The court then stated the parties had previously discussed an arrangement whereby defendants would plead to the sheet, and the prosecutor would not argue for more than 20 years for defendant and five years for Baldwin, but the court made it clear it would not be limited by the prosecutor's argument, and that the court was free to impose any lawful sentence.

After a break to enable counsel to discuss the matter with their respective clients, both defendant and codefendant Baldwin elected to plead guilty. Defendant completed a change-of-plea form. It states he agrees to plead guilty as charged and that "It is agreed by the parties that the prosecution will not argue for more than 20 years." The maximum possible prison punishment was calculated at 32 years eight months, and the form acknowledges that defendant will be limited to earning conduct credits at the rate of 15 percent. (Because of defendant's "violent" convictions, such as for robbery, he is subject to a 15 percent limitation on conduct credits.) ([CAL. PENAL CODE], §§ 2933.1, subd. (a), 667.5, subd. (c)(9) ["Any robbery"].)

The trial court questioned defendant about the form, and his understanding of and waiver of his rights. In particular, the court ensured that defendant understood the court was not bound by the prosecutor's argument, and the maximum penalty was up to 32 years eight months.

Defendant then pleaded guilty to residential robbery, residential burglary, assault with force likely to cause great bodily injury (three counts, with separate victims), criminal threats (two counts, with separate victims), assault with a semiautomatic firearm (two counts, with separate victims), false imprisonment by violence, knowing receipt of stolen property, possession by a felon of a firearm, carrying a loaded firearm with the intent to commit a felony, and defendant admitted allegations of use and personal use of a firearm, and acting in concert with another to commit a robbery. ([CAL. PENAL CODE] §§

211/212.5, 213, subd. (a)(1)(A), 236/237, 245, subd. (a)(1) & (b), 422, 459, 496, former subd. (a), 12021, subd. (a)(1), 12022.5, subd. (a), 12022.53, subd. (b), 12023.)

On August 28, 2009, represented by Attorney John Kucera, defendant moved to withdraw his plea, arguing the trial court improperly refused to consider the plea bargain pursuant to the local rule, stating: "This is not a battle between the People and the defendant since the People have agreed to bargain—rather[,] it is a conflict between a judicial desire for administrative efficiency and a defendant's right to have the bargain considered by the court." Defendant declared he then pleaded guilty under duress.

The motion partly relied on a *dissenting* opinion in *People v. Cobb* [, 188 Cal. Rptr. 712 (Cal. 1983)] (*Cobb* ). The *majority* opinion in *Cobb* upheld a so-called "Fresno rule" that prohibited plea bargaining after the trial setting conference, and required any pleas after that time to be "'straight up'" pleas, that is, admissions to all the charges. (*Id.* at [714].)

At the hearing on the motion to withdraw the plea, defendant's former attorney, David Wilson, testified as a prosecution witness that he told defendant he was potentially facing over 30 years in prison. Defendant had not accepted a 15- to 16-year offer made on Wilson's watch.

Attorney Campbell testified she advised defendant of his rights before he entered his plea, and he had earlier rejected an offer of 18 years four months at the last settlement conference, although he had previously said he did not want to go to trial. At the time of the trial readiness conference, Campbell explained the local rule limiting late plea bargains to defendant, but despite the local rule, negotiations were ongoing. She was sure defendant understood the rule. Specifically, she told defendant "the court does not allow us to enter into a negotiated plea absent some change in circumstances," although, in this case, she felt the circumstances had changed. She told defendant that the prosecutor had suggested an offer "in the 20-year range" and defendant was not interested in such an offer. It was after that happened, the weekend prior to trial, that her investigator spoke with former codefendants Jones and Levan, who were in prison, and she learned that one of them had changed his story, which she construed as a change in circumstances. After she talked to defendant about this, and that it was "possible" to resolve the case for 20 years, the prosecutor named the figure of 21 years, which was also communicated to defendant.

The trial court recalled discussing the "evolving statement by one of the coparticipants" regarding defendant having a gun, and reiterated that that was not a change of circumstance warranting a departure from the local rule, and recalled that he had run the point by Judge Ruggiero at the time, who had agreed with his assessment. The court reiterated that there was a videotape showing defendant holding what could be a gun, and "at least three" witnesses who said he had a gun; therefore, the new information was not unknowable.

Attorney Kucera argued there had been a change of circumstance, but he did not argue the local rule was invalid.

The trial judge noted defendant had absconded; refused to settle the case when he could have; filed declarations "that I find are patently false"; lacked credibility; and was trying to avoid judgment.

-4-

> The motion to withdraw the plea was denied.
> Turning to sentencing, the probation report had recommended 28 years eight months, but the court tentatively announced it would impose 27 years four months. The prosecutor said: "The People submit." Defense counsel argued in part as follows: "I know the District Attorney has limited itself to arguing for no greater than 20 years. I would ask the court to impose the [18 years four months] that came about at the point in time when everybody was just too busy to listen." When the trial court invited the prosecutor to reply, the prosecutor said: "Nothing."
> After pointing out it found defendant's conduct inexcusable and it believed defendant told "a fantastic pack of lies" in his declaration, the trial judge said: "Those were not good signs to me, Mr. Biddle, in helping me to find some reason to give you what [Attorney] Kucera was asking for or what [the prosecutor] was bound to argue for, and I am just not in a position to do it now."
> The trial court then sentenced defendant to prison for 27 years four months. The court found no mitigating factors, but a number of aggravating factors, including that defendant was in a position of leadership and induced others to participate, the crime showed planning, in that defendant "had disguises and weapons," defendant's record of prior convictions and sustained juvenile petitions were numerous and of increasing seriousness, and defendant was on probation or parole when the crime was committed.

*People v. Biddle*, No. C063479, 2010 WL 4739535, at *1-5 (Cal. Ct. App. Nov. 23, 2010) (footnote omitted).

Through counsel, Biddle directly appealed, arguing that: 1) the trial court abused its discretion in determining that there was no change in circumstances under the local rule prohibiting plea agreements after the trial readiness conference, thereby rendering his plea involuntary and denying his right to effective assistance of counsel and due process, and also that the court abused its discretion in denying Biddle's subsequent motion to withdraw his guilty plea; 2) the prosecution breached the plea agreement by failing to protest the court's imposition of 27 years' imprisonment where the prosecution had agreed not to argue for more than 20 years; 3) trial counsel was ineffective for failing to object to the prosecution's silence during sentencing; and 4) the trial court committed prejudicial error when it cut Biddle off mid-sentence during the *Marsden* hearing.

The California Court of Appeal denied Biddle relief on his claims in a reasoned opinion.

Through counsel, Biddle filed a petition for review with the California Supreme Court. Biddle argued that 1) the trial court abused its discretion in determining that there was no change in circumstances under the local rule prohibiting plea agreements after the trial readiness conference; 2) the prosecution breached the plea agreement, in which it agreed to not argue for more than 20 years' imprisonment, where it failed to explicitly argue for 20 years; and 3) the trial court abused its discretion in cutting Biddle off during the *Marsden* hearing.

The California Supreme Court summarily denied review.

Biddle then filed a *pro se* petition for writ of habeas corpus with the Shasta County Superior Court. Biddle argued that: 1) his plea should be set aside because the trial court refused to accept a plea bargain presented on the day of trial; 2) the prosecutor committed misconduct by failing to explicitly argue for a 20-year sentence; and 3) that trial counsel was ineffective on multiple grounds, most relating to Biddle's understanding of the local rule preventing plea bargains on the day of trial, and that his plea was involuntary as a result.

Before the superior court entered a determination, Biddle filed the instant Petition for Writ of Habeas Corpus with this Court.

The superior court then denied Biddle relief in a reasoned opinion. The court held that to the extent Biddle raised the same claims he did on direct appeal, he was barred from raising them on collateral review. Citing the appellate court decision, the superior court concluded that even if trial counsel did not fully explain the plea bargain to Biddle and even if trial counsel did not have an adequate understanding of the local rule, Biddle would not have received a more favorable outcome absent counsel's allegedly deficient performance. The court further held that

the trial court was not bound by the terms of the partial plea agreement and could deviate from the stipulation.

Biddle then filed a second *pro se* petition for writ of habeas corpus with the Shasta County Superior Court, arguing that: 1) his sentence should have been stayed pursuant to California Penal Code § 654; 2) the trial court failed to enter a finding as to why it was imposing the upper term on count one; and 3) California Penal Code § 2933.1 entitled him to an additional day of pre-sentence custody time.

The superior court concluded that Biddle's writ failed procedurally because he failed to raise any of the claims on either direct appeal or in his first petition for habeas relief filed with the superior court. The court alternatively denied Biddle relief on the merits.

Biddle filed a *pro se* petition for writ of habeas corpus with the California Court of Appeal, raising the same arguments he did in his second habeas corpus petition filed with the superior court. The court of appeal summarily denied relief.

Biddle timely filed his Petition for Writ of Habeas Corpus with this Court on April 20, 2012.

## II. GROUNDS RAISED

In his Petition filed with this Court, Biddle argues as follows: 1) the trial court abused its discretion in determining that there was no change in circumstances under the local rule prohibiting plea agreements after the trial readiness conference, thereby rendering his plea involuntary and denying him the effective assistance of counsel and right to due process, and the court abused its discretion in denying Biddle's subsequent motion to withdraw his guilty plea; 2) the prosecution breached the plea agreement, in which it agreed to not argue for more than 20

years' imprisonment, by failing to explicitly argue for 20 years; 3) trial counsel was ineffective for failing to object to the prosecution's silence during sentencing; and 4) the trial court committed prejudicial error when it cut Biddle off mid-sentence during the *Marsden* hearing. Biddle also raises additional claims in his Traverse.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v. Lett*, 559 U.S. 766, 778-79 (2010). The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds and not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are

lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards in habeas review, this Court reviews this "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Claim One: Failure to allow a plea agreement under the local court rules

Under a Shasta County rule, the "home court judge" has the discretion to limit pleas as follows: "All cases shall be settled as soon as reasonably practicable. The home court judge may set cut-off dates for accepting negotiated dispositions." The local practice is for the home court judge to forbid plea bargaining after the trial readiness conference in the absence of a significant change of circumstances. Here, the presiding judge confirmed with the home court judge that the change in witness testimony, as described by defense counsel, did not meet this standard. Biddle argues that the trial court abused its discretion in finding that there was no significant change of circumstances where either one or two of his cohorts changed their story and "may even confirm" that they witnessed Biddle with a gun during the incident in question. Biddle argues that defense counsel did not know that the cohort or cohorts had changed their positions until they were re-interviewed the weekend before trial. Biddle further argues that the prohibition of entering a plea agreement on the day of trial rendered his plea involuntary.

The appellate court denied Biddle relief on this claim. The court noted that both trial counsel understood the local rule, Attorney Campbell advised Biddle "in detail" about the rule and did not object to the trial court's description of the rule, and Attorney Kucera did not object to the rule in the motion to withdraw the plea. Rather, both attorneys argued that a sufficient change of circumstances had occurred. The appellate court concluded that the trial court did not abuse its discretion where several witnesses were prepared to testify that Biddle had a gun, a videotape—although not conclusive—corroborated this fact, and the one or two witnesses Attorney Campbell had expected to testify to the contrary were co-perpetrators serving prison time for their crimes whose credibility would have been in doubt. The appellate court held that, moreover, the trial court would have rejected a 20-year plea bargain even if it had been timely in light of the court's finding of "many aggravating facts and no mitigating facts." In addition, the case included serious felony charges that triggered a presumption against judicial acceptance of a plea bargain under California law. Finally, the court concluded that Biddle was free to take the case to trial, and the fact that "he was faced with a hard choice after the rejection of the proposed 20-year plea bargain does not mean the choice he made, after proper and thorough advisements, was involuntary."

Biddle fails to assert a cognizable claim for federal habeas corpus relief. Biddle makes no claim that the court of appeal's determination violates the Constitution, laws, or treaties of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The court of appeal's determination that the trial court did not abuse its discretion in rejecting a plea bargain on the day of trial under state statutory and case law is a matter of state law not reviewable by this Court. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67-68 ("[W]e

reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). In addition, the United States Supreme Court had held that a defendant has "no right to be offered a plea, nor a federal right that the judge to accept it." *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012) (internal citations omitted).

Lastly, as the appellate court noted, the trial court's rejection of the proposed plea agreement did not render Biddle's plea involuntary, as he was free to proceed to trial. Biddle's responses to the court's colloquy at the plea hearing also indicate that his plea was voluntary. Biddle answered in the affirmative when the court informed him of the consequences of pleading guilty, including that he would be giving up the right to a speedy trial and trial by jury, the right to present a defense, the right to remain silent, the right to confront and cross-examine witnesses, and the right to have aggravating sentencing factors found by a jury. Biddle also answered in the negative when asked by the court if he had been threatened into pleading guilty and whether he was under the influence of any substance which would prevent him from being able to knowingly, understandingly and voluntarily waiving his rights. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). There is nothing in the record to indicate that Biddle did not understand the full consequences of his plea. *Brady v. United States*, 397 U.S. 742, 755 (1970) (A guilty plea is considered voluntary and intelligent if the defendant enters the plea with full awareness of its "direct consequences."). Biddle is therefore not entitled to relief on this claim.

Claim Two: Breach of plea agreement

At the plea hearing, the trial court informed Biddle that although the prosecution was bound to argue for no more than 20 years, the court was free to sentence Biddle to less than 20 years or to the maximum penalty of 32 years and 8 months. The court noted, though, that it gives "considerable weight to the arguments of the prosecutors." At sentencing, the trial court again stated that it was not bound by the trial court's promise not to argue for more than 20 years and indicated that it intended to sentence Biddle to 27 years and 3 months or "27-four." The prosecution submitted, offering no argument against the proposed sentence. Biddle argues that the prosecution breached the plea agreement because it "presented no argument, thereby implicitly agreeing through . . . silence with the trial court's intended sentence." Biddle argues that the "mutual intention" of the parties required the prosecution to explicitly argue for a sentence of no more than 20 years. Biddle further contends that even if the prosecution's silence did not breach the obligation to not argue for more than 20 years, "it was still a breach of the implied covenant of good faith and fair dealing."

The appellate court denied Biddle relief on this claim, concluding that "in a promise not to argue for *more than* a certain prison term," there was no "duty to argue *for* that same term." Moreover, the prosecution did not respond when defense counsel argued for a term of 18 years and 4 months when the prosecution could have argued for the higher term of 20 years. Finally, although the trial court stated that it gave deference or weight to a prosecution's recommendations, it also stated that it was not bound by the 20-year agreement.

The Supreme Court has held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or

-12-

consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971); *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006). However, "the construction and interpretation of state court plea agreements and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." *Buckley*, 441 F.3d at 694-95 (quoting *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987) (internal quotation marks omitted)). Here, the court of appeal determination that the prosecution did not breach the plea agreement was not unreasonable where the prosecution at no point argued for more than 20 years' imprisonment. Biddle is therefore not entitled to relief on this claim.

Claim Three: Ineffective assistance of trial counsel

Biddle next argues that trial counsel was ineffective for failing to object to the prosecution's failure to explicitly argue for a 20-year sentence.

Biddle did not raise this claim to the California Supreme Court either on direct or collateral review. Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). To have properly exhausted his state court remedies, Biddle must have presented both the legal arguments and the factual basis to the highest state court. *See Peterson v. Lambert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003). Unexhausted claims must be dismissed. *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).

However, this Court need not rely on this basis as it may deny the petition on the merits notwithstanding the lack of exhaustion of state court remedies. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure

of the applicant to exhaust the remedies available in the courts of the State."). In this case, Biddle's claim is without merit.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Biddle must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

As discussed above, the prosecution did not breach the plea agreement by failing to explicitly argue for a 20-year sentence. All that was required was that the prosecution refrain from arguing for a sentence greater than 20 years, and the prosecution fulfilled that promise. An objection by trial counsel would not have been fruitful, and counsel cannot be deemed deficient for failing to raise a meritless objection. *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim); *Jones v. Barnes*, 463 U.S. 745, 754 (1983) (appellate counsel is not under "a duty to raise every 'colorable' claim suggested by a client"). Biddle is therefore not entitled to relief on this claim.

Claim Four: Cutting Biddle off during the *Marsden* hearing

Biddle lastly argues that the trial court cut him off mid-sentence during the *Marsden* hearing, thus denying him his right to the effective assistance of trial counsel.

The court of appeal denied Biddle relief on this claim, concluding as follows:

> A trial court, in conducting a *Marsden* motion, must allow a defendant to explain the basis of his or her claim, with specific examples of counsel's purported failings. ([*See People v. Barnett*, 954 P.2d 384, 17 Cal. 4th 1044, 1085 (Cal. 1998)].) A trial court's ruling on a *Marsden* motion is reviewed for an abuse of discretion. (*Ibid.*)
> The transcript, quoted more fully earlier, shows the trial court listened to defendant's reasons for wanting to discharge Attorney Campbell, listened to Campbell's reply, and then made its ruling. However, in the course of stating its ruling, defendant interrupted, and although the trial court indulged defendant for a while, eventually it cut off the interruption.
> First, after the trial court listened to defendant's concerns, it asked defendant if there was anything else he wanted to add, and defendant said "No. That's it, Your Honor." The court then invited Attorney Campbell to respond to defendant's contentions, which she did. The court then began explaining its ruling. Defendant repeatedly interrupted. Eventually the court cut him off, stating, "Hang on, Mr. Biddle.

> [¶] DEFENDANT BIDDLE: I's sorry. I'm sorry. [¶] THE COURT: This is my turn to explain to you. [¶] DEFENDANT BIDDLE: Okay. Great. Sorry." The court then completed its ruling.
>
> The record shows defendant was allowed to fully air his grievances, and the only time the trial court cut him off was during the trial court's ruling, after both defendant and Attorney Campbell had had their say. Defendant apologized for interrupting, but never suggested he had further relevant facts or grounds supporting his *Marsden* motion. ([*Cf. People v. Ivans*, 4 Cal. Rptr. 2d 66, 2 Cal. App. 4th 1654, 1665-66 & n.6 (Cal. Ct. App. 1992) (trial court failed to "inquire into all of the reasons for Ivans's request, even though Ivans explicitly stated he had listed only some of his reasons")].) We find no error.

*Biddle*, 2010 WL 4739535, at *11.

In a *Marsden* motion, a defendant seeks substitute counsel on the ground that he or she has an irreconcilable conflict with appointed counsel. *Schell v. Witek*, 218 F.3d 1017, 1021 (9th Cir. 2000). "[F]orcing a defendant to go to trial with an attorney with whom he has an irreconcilable conflict amounts to constructive denial of the Sixth Amendment right to counsel." *Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007). "[T]he ultimate constitutional question the federal courts must answer here is . . . whether . . . the conflict between [the Petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1026. Therefore, when a criminal defendant makes a request for a substitution of counsel, the trial court is constitutionally required to inquire into the defendant's reasons for wanting a new attorney. *Id*. at 1025 ("[I]t is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the merits before the case goes forward."); *see also Stenson*, 504 F.3d at 886 ("A trial court's inquiry regarding counsel's performance on a motion to substitute counsel should be such necessary inquiry as might ease

the defendant's dissatisfaction, distrust and concern." (citation and internal quotation marks omitted)). "It also should provide a sufficient basis for reaching an informed decision regarding whether to appoint new counsel." *Stenson*, 504 F.3d at 886 (citation, internal quotation marks and brackets omitted).

After reviewing the transcripts of the *Marsden* hearing, this Court concludes that the court of appeal's determination was not contrary to or an unreasonable application of federal law. The trial court's inquiry was sufficient to allow Biddle to present his claims and for the court to reach a determination as to whether the appointment of new counsel was warranted. Moreover, Biddle has not set forth what he would have argued had the court not cut him off. *See In re Vey*, 520 U.S. 303, 303-04 (1997) (per curiam) (conclusory statements insufficient to support allegations on habeas corpus review). Biddle is therefore not entitled to relief on this claim.

<u>Additional claims raised in his Traverse</u>

Biddle raises a number of issues for the first time in his Traverse, including the claims that the trial judge lacked subject matter jurisdiction to determine whether changed circumstances warranted a plea agreement on the day of trial, AEDPA's deferential standard should not be applied to his ineffective assistance of counsel claim, and his guilty plea was taken in violation of federal law. A Traverse, however, "is not the proper pleading to raise additional grounds for relief." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Rather, "[i]n order for the State to be properly advised of additional claims, they should be presented in an amended petition or . . . in a statement of additional grounds. Then the State can answer and the

action can proceed." *Id*. Because these claims were not properly raised, they may not be considered by this Court.

## V. CONCLUSION

Biddle is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327 (2003)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 10, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge